Mary K. KRUEGER, personal representative of the Estate of Iver M. Villa, a/k/a Iver Martin Villa, and a/k/a Martin Villa, deceased, Petitioner

v.

Marlyn L. ARY, Respondent.

No. 08SC63.

Supreme Court of Colorado, En Banc.

March 16, 2009.

sented evidence sufficient to rebut her alleged undue influence over Villa and the transaction's alleged unfairness. Before the court submitted the case to the jury, Krueger asked for an instruction informing the jury of the previously-rebutted presumptions and requiring the jury to consider the presumptions as evidence in Krueger's favor. The trial court declined to so instruct the jury. The jury returned a verdict in favor of Ary. Krueger appealed, and the court of appeals affirmed. *Krueger v. Ary*, No. 06CA2142, —— P.3d ——, 2007 WL 4336226 (Colo.App. Dec. 13, 2007). Krueger then petitioned this court to review whether the presumptions disappear from the case once rebutted, or remain in the case and go to the jury as "some evidence" of undue influence and unfairness.

We affirm the court of appeals and hold the rebuttable presumptions of undue influence and unfairness do not continue in a case after they are sufficiently rebutted. However, we also hold that even after these presumptions are rebutted, a jury may still infer the presumed facts from the evidence giving rise to them. Whether a trial court instructs the jury on these permissible inferences is within its discretion, and the trial court here did not abuse its discretion in failing to so instruct the jury.

## FACTS AND PROCEDURE

Iver Martin Villa spent most of his life on his family homestead outside of Meeker, Colorado. He married his wife Mary and raised two children, Mary K. Krueger and John Villa, on the ranch. In the early 1980s, Krueger left the ranch to live and work internationally, but intermittently returned to northwestern Colorado to be close to the Villas.

Marlyn Ary started working for the Villas as a part-time housekeeper in the mid–1970s. When Mary Villa died suddenly from a brain tumor in 1989, Ary stayed on, providing the same services for Villa. The two became friends.

In the mid–1990s, Villa's health began to decline. He suffered from multiple ailments, including emphysema, congestive heart fail-

Hanes & Schutz, LLC, Timothy J. Schutz, January D. Barrett, Colorado Springs, Colorado, Attorneys for Petitioner.

James D. Osborne, Craig, Colorado, Attorney for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

## INTRODUCTION

After Iver Martin Villa's death, his daughter Mary K. Krueger sued his caretaker Marlyn Ary, seeking to void his monetary and real property conveyances to Ary. The case went to trial, where Krueger raised the presumptions of undue influence and unfairness by demonstrating Ary's fiduciary and confidential relationship with Villa. Ary pre-

ure, and macular degeneration. Due to his illnesses, Ary started acting as Villa's paid caregiver in addition to his housekeeper. She assisted Villa by administering his medication, reconciling his bank accounts, filling out and helping him sign his checks, reading him his legal and financial documents, and transporting him to his various appointments.

In 1997, Villa executed a will leaving his estate to Krueger and her children. But in 2001, Villa began construction on a new house and expressed a desire to leave it to Ary instead of his family. In April 2003, Villa conveyed an interest in the completed house and the parcel of land it occupied, worth $350,000.00, to Ary by executing a deed for joint tenancy. After making the conveyance, Villa told multiple people he was worried Krueger would try to overturn it. While in the hospital in November 2004, Villa wrote Ary a check for $5,000.00 so she could defend her ownership in court.

Upon Villa's death in April 2005, Krueger became the personal representative of his estate. She brought suit against Ary, claiming Villa's conveyance of the house, land, and $5,000.00 were void based on Ary's breach of fiduciary duty and undue influence over Villa as his paid caretaker. Ary denied the claims, asserting the conveyances were gifts from Villa for her years of service. The case was tried to a jury. During trial, Krueger offered evidence of Ary's fiduciary and confidential relationship with Villa, which raised the rebuttable presumptions that Ary exercised undue influence over Villa when he made the conveyances, and that the conveyances were unfair, unjust, and unreasonable. Ary presented evidence regarding Villa's intent and desire to make the conveyances, which the court found sufficient to rebut the presumptions. Before the trial court submitted the case to the jury, Krueger proffered instructions informing the jury of the rebutted presumptions and directing the jury to consider the presumptions in conjunction with the other evidence of undue influence and unfairness. The trial court rejected Krueger's instructions, and instead used instructions omitting reference to the presumptions. The jury returned a verdict in favor of Ary.

On appeal, Krueger argued the trial court erred in refusing to instruct the jury about the rebutted presumptions of undue influence and unfairness because the presumptions continue in a case even after sufficient rebutting evidence is provided, acting as "some evidence" of undue influence. The court of appeals disagreed, holding the presumptions disappeared from the case once Ary rebutted them. In determining whether the presumptions continue or disappear, the panel considered the relevant case law, the Colorado pattern jury instructions on presumptions in general, and the pattern instructions on presumptions of undue influence and unfairness in particular. It held the pattern instructions do not unequivocally state that these presumptions continue, but even if they did, the prevailing case law controls. Relying on *Lesser v. Lesser*, 128 Colo. 151, 250 P.2d 130 (1952) and *Judkins v. Carpenter*, 189 Colo. 95, 537 P.2d 737 (1975), the court of appeals held the presumptions disappear, and therefore the trial court did not err in refusing to inform the jury about them.

■ Krueger petitioned this court for review. We granted certiorari to determine whether the presumptions of undue influence and unfairness continue or disappear once sufficient rebutting evidence is produced. We hold the rebuttable presumptions of undue influence and unfairness do not continue in a case after they are sufficiently rebutted. In this case, Krueger raised the rebuttable presumptions, the presumptions shifted the burden of going forward to Ary, and Ary met that burden. Because Ary rebutted the presumptions, the presumed facts may not be established as a matter of law. However, even after these presumptions are rebutted, a jury may still infer the presumed facts from the evidence giving rise to them. In this case, nothing prevented the jury from inferring undue influence and unfairness from Ary's fiduciary and confidential relationship with Villa. Whether a trial court instructs the jury on these permissible inferences is within its discretion. Here, the trial court did not abuse its discretion in failing to

so instruct the jury. The court of appeals is affirmed.

## ANALYSIS

### I.

As a preliminary matter, we dispense with Krueger's argument that Colorado's pattern jury instructions control the outcome of this case. Krueger relies on Colorado civil jury instructions, fourth edition, 3:5, 30:15, 30:16, and 34:16 to argue rebuttable presumptions "continue" or "remain" in a case even after rebutted. However, the pattern instructions are not law, not authoritative, and not binding on this court. Therefore, they do not trump case law. *See Fed. Ins. Co. v. Pub. Serv. Co.*, 194 Colo. 107, 570 P.2d 239, 241 (1977) (stating pattern instructions "are not to be used if they do not reflect the prevailing law"); *Short v. Kinkade*, 685 P.2d 210, 211 (Colo.App.1983) (stating a "pattern jury instruction is intended as a model and will yield to prevailing law"); C.R.C.P. 51.1. We follow the prevailing law.

### II.

■ Rebuttable presumptions have a limited purpose. A rebuttable presumption (1) shifts the burden of going forward to the party against whom it is raised, and (2) if that burden is not met, establishes the presumed facts as a matter of law. However, if the burden is met, the presumption does not continue in the case. Nonetheless, a permissible inference of the presumed facts remains.

### A.

■ A proponent raises a particular presumption when she offers certain facts into evidence. After a presumption is raised, it shifts an evidentiary burden to the opponent. For example, in some jurisdictions, if a proponent offers evidence that she mailed a properly-addressed letter to the opponent and the letter was not returned, she raises the presumption that the opponent received

the letter. *See* 2 Kenneth S. Broun, *McCormick on Evidence* § 344 (6th ed.2006). Once this presumption is raised, the opponent's receipt becomes a presumed fact and the opponent has the burden of trying to disprove it.

■ The weight of the opponent's burden depends on whether the presumption is conclusive or rebuttable. A rebuttable presumption shifts only the burden of going forward with evidence, and does not shift the entire burden of proof. *See White v. Hurlbut Grocery Co.*, 62 Colo. 483, 162 P. 1143 (1917) (holding the burden of proof remains on the plaintiff); *American Ins. Co. v. Naylor*, 101 Colo. 34, 70 P.2d 349 (1937) (holding the burden of proof does not shift from "the party who has the affirmative of the issue"); CRE 301 ("[A] presumption imposes ... the burden of going forward ... but does not shift ... the burden of proof...."). Because a rebuttable presumption does not shift the burden of proof, the opponent is not required to persuade the jury of her position regarding the presumed facts in order to rebut it. Rather, she is only required to offer evidence legally sufficient to meet the burden of going forward. In other words, whether the opponent's evidence meets the burden is a question of legal sufficiency for the trial court, not a question of fact for the jury.

■ Despite some confusing case law, this general rule holds true for the rebuttable presumptions of undue influence and unfairness. These presumptions may arise in the context of a conveyance. If a party seeks to void a conveyance based on a grantee's undue influence over a grantor, that party has the burden of proving the conveyance was subject to undue influence. *Lesser*, 128 Colo. at 157, 250 P.2d at 133. However, if the party can show the grantee was a fiduciary to the grantor or had a confidential relationship with the grantor, either relationship raises the rebuttable presumptions that the grantee unduly influenced the grantor and that the transaction was unfair, unjust, and unreasonable.[1] *Id.* Once raised, these presumptions shift the burden of going for-

---

1. The court of appeals analyzed the presumptions of undue influence and unfairness, and concluded they are interchangeable and indistin-

guishable. *Krueger v. Ary*, No. 06CA2142, slip op. at 20–22, —— P.3d at ——. For purposes of this opinion, we agree.

ward to the party seeking to uphold the conveyance. *Judkins*, 189 Colo. at 97, 537 P.2d at 738 (citing *Lesser*, 128 Colo. at 157–58, 250 P.2d at 133–34).

We apparently contradicted this general rule in *Hilliard v. Shellabarger*, 120 Colo. 441, 443, 210 P.2d 441, 442 (1949), where we stated the rebuttable presumptions of undue influence and unfairness shift the burden of proof. But despite this assertion, our discussion never analyzed or even addressed the distinction between the burden of proof and the burden of going forward. Instead, we focused on the existence of the presumption of undue influence, and reversed the trial court for failing to recognize it. Admittedly, in doing so we briefly discussed the burden of proof, quoting authority stating "the transaction cannot stand unless the person claiming the benefit of it is able to repel the presumption by contrary evidence, proving it to have been in point of fact fair, just, and reasonable." *Id.* at 448, 210 P.2d at 444. Yet, this statement is ambiguous—the reference to repelling the presumption suggests the burden of going forward shifts, while the reference to proving the transaction is fair, just, and reasonable suggests the burden of proof shifts. Further, because the presumption's opponent failed to provide any rebutting evidence, we would have reached the same result whether we held the presumption shifted the burden of proof or merely the burden of persuasion. Because our brief and contradictory discussion is hardly a convincing analysis, and we would have reached the same result regardless of the burden shifted, *Hilliard* is not persuasive precedent for the proposition that the presumptions of undue influence and unfairness shift the burden of proof.

Additionally, *Hilliard's* validity is called into question by both prior and subsequent cases. Previous Colorado cases distinguish the burden of proof from the burden of going forward, and hold the burden of proof never shifts. *See Hurlbut Grocery*, 62 Colo. 483, 162 P. 1143; *Naylor*, 101 Colo. 34, 70 P.2d 349. Three years after *Hilliard*, this court explicitly held the rebuttable presumptions of undue influence and unfairness shift only the burden of going forward, overruling *Hilliard*

sub silentio. *Lesser*, 128 Colo. at 157–58, 250 P.2d at 133–34. For all these reasons, we disapprove *Hilliard's* statements that the presumptions of undue influence and unfairness shift the burden of proof, and we expressly overrule *Hilliard* to the extent it is inconsistent with this opinion.

After *Lesser's* explicit holding in 1952, we again stated the presumptions of undue influence and unfairness shifted the entire burden of proof in *Arnold v. Abernethy*, 134 Colo. 573, 578, 307 P.2d 1106, 1108 (1957). However, like in *Hilliard*, in *Arnold* we did not analyze the distinction between the burden of proof and the burden of going forward, and instead made ambiguous statements regarding the burden of proof. First, we framed the issue as whether "the law raise[s] a presumption that the [conveyance] was obtained by undue influence ... and thus require[s] that such fiduciary overcome the presumption ... by ... proving the transactions ... to have been in fact fair, just and reasonable[.]" *Id.* at 577, 307 P.2d at 1108. A few paragraphs later, we stated the opponent "has the burden of proof to overcome the presumption of undue influence." *Id.* at 578, 307 P.2d at 1108. Like the ambiguous statement in *Hilliard*, these references confuse the burden of proof and the burden of going forward. Also like *Hilliard*, *Arnold* does not analyze the distinction between the burden of proof and the burden of going forward or convincingly hold the presumptions of undue influence and unfairness shift the burden of proof.

Further, eighteen years after *Arnold*, we affirmed *Lesser's* holding that the presumptions of undue influence and unfairness shift only the burden of going forward, overruling *Arnold* sub silentio. *Judkins*, 189 Colo. at 97, 537 P.2d at 738. For these reasons, we disapprove *Arnold's* statements that the presumptions of undue influence and unfairness shift the burden of proof, and we expressly overrule *Arnold* to the extent it is inconsistent with this opinion. Therefore, notwithstanding contrary language in *Hilliard* and *Arnold*, the rebuttable presumptions of undue influence and unfairness shift the burden of going forward, rather than the burden of proof.

### B.

After a rebuttable presumption is raised and the burden of going forward is shifted, if the opponent does not meet her burden, the presumption establishes the presumed facts as a matter of law. Returning to the original example, if a proponent offers evidence to raise the presumption that the opponent received a letter, the opponent must now offer her own evidence to show she did not receive the letter. If the court finds the opponent's evidence legally insufficient to meet her burden of going forward, the presumption establishes the presumed fact—the opponent's receipt—as a matter of law.

On the other hand, if the presumption's opponent does offer evidence legally sufficient to meet the burden of going forward, the presumption can no longer establish a presumed fact as a matter of law. Instead, the fact remains disputed, to be determined by the jury. Because the rebuttable presumption shifted the burden of going forward and the burden was met, the presumption does not continue in the case.

The rebuttable presumptions of undue influence and unfairness operate in the same way. The party seeking to void the conveyance may raise the presumptions by proving the grantee was in a fiduciary and confidential relationship with the grantor. But if the party seeking to uphold the conveyance offers sufficient rebutting evidence, the questions of the grantee's influence and the transaction's fairness must be resolved as questions of fact. *Lesser*, 128 Colo. at 158, 250 P.2d at 134.

Here, Krueger offered evidence of Ary's fiduciary and confidential relationship with Villa, and the parties do not dispute this evidence raised the presumptions that Ary unduly influenced Villa and that the transactions were unfair. The presumptions shifted the burden of going forward to Ary. The parties do not dispute Ary offered evidence legally sufficient to meet her burden. Because Ary offered sufficient rebutting evidence, the presumed facts—her alleged undue influence and the unfairness of the transaction—cannot be established as a matter of law, and the presumptions do not

continue. Therefore, the trial court may not instruct the jury about the presumptions of undue influence and unfairness. Consequently, Krueger's requested instructions—which inform the jury of the presumptions and require the jury to consider the presumptions in conjunction with all the other evidence to determine whether Ary unduly influenced Villa—are improper.

### C.

Though a rebuttable presumption does not continue in a case once rebutted, a permissible inference of the presumed facts remains. In other words, though the presumed facts may not be established as a matter of law, the jury may nevertheless *infer* the presumed facts from the evidence that gave rise to the presumptions. Therefore, a jury may still consider the grantee's fiduciary and confidential relationship with the grantor, and infer from that evidence the grantee unduly influenced the grantor and the transaction was unfair, unjust, and unreasonable.

In this case, after Ary met her burden of going forward and the presumed facts—undue influence and unfairness—could no longer be established as a matter of law, what remained were the permissible inferences of undue influence and unfairness. That is, the presumptions of undue influence and unfairness no longer worked in the case, but the jury could still infer from Krueger's evidence regarding Ary's fiduciary and confidential relationship with Villa that Ary exercised undue influence over Villa and the transaction was unfair. Krueger argues a jury instruction on the presumptions is necessary to make the jury aware of these permissible inferences. However, because a jury instruction on inoperative presumptions is inappropriate, we consider whether a trial court is required to instruct a jury on the permissible inferences.

### III.

Trial courts maintain discretion as to jury instructions' form and style. There are some instances in which evidence-emphasizing instructions are appropriate, but

generally a trial court is not required to instruct the jury on permissible inferences. A trial court does not abuse its discretion in failing to instruct the jury on a permissible inference unless the omission caused substantial prejudice to the requesting party.

"A trial court is obligated to correctly instruct the jury on the law applicable to the case." *Jordan v. Bogner*, 844 P.2d 664, 667 (Colo.1993). However, as long as this obligation is met, a trial court maintains broad discretion over the instructions' form and style. *Montgomery Ward & Co. v. Kerns*, 172 Colo. 59, 63–64, 470 P.2d 34, 36–37 (1970) (citing *Marsh v. Cramer*, 16 Colo. 331, 27 P. 169 (1891)). For example, a civil litigant is entitled to a jury instruction on the theory of her case as long as she has offered evidence to support the theory. *Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1384 (Colo.1998). Yet the trial court need not offer the litigant's tendered instructions if the other instructions encompass the litigant's theory. *Id.*

Despite a trial court's discretion as to jury instructions' form and style, we disfavor instructions emphasizing specific evidence. We have stated a trial court "has no duty to select all the salient points in the evidence, favorable and unfavorable, and specifically call them to the attention of the jurors," because such pointed instructions tend to confuse the jury and result in incorrect directives regarding evidentiary weight. *Lowe v. People*, 76 Colo. 603, 615, 234 P. 169, 174 (1925); *see also Leopold v. People*, 105 Colo. 147, 154, 95 P.2d 811, 814 (1939) (defendant's tendered instructions incorrectly required the jury to consider his specific intent, a nonessential element to his conviction, when determining his penalty); *McKenna v. People*, 124 Colo. 112, 118–19, 235 P.2d 351, 355 (1951) (defendant's tendered instructions incorrectly asserted the jury was bound by the co-defendant's exculpatory statements regarding the defendant unless those statements were otherwise disproved). Because of these problems, Krueger's proffered instructions are also not appropriate as permissible inference instructions. Krueger's instructions emphasize the inoperative presumptions and require the jury to consider

them when weighing the evidence. By stating "the law presumes ... undue influence," one instruction confuses the jury as to the role of the rebutted presumption of undue influence. *See* COJICIV 4th 34:16. By stating "[y]ou must consider this presumption together with all the other evidence in the case in determining ... undue influence," the instruction mandates the jury consider a legal presumption as a piece of evidence in Krueger's favor rather than informs the jury it may infer undue influence and unfairness from the evidence giving rise to the presumption. *Id.*

Yet there are some instances in which carefully-worded evidence-emphasizing instructions are appropriate. These instructions are justified by strong underlying policy considerations. For example, if a civil litigant destroys evidence sought by the opposing party, the trial court may instruct the jury of its ability to infer that the destroyed evidence would have been unfavorable to the destroying party. *Aloi v. Union Pacific R.R. Corp.*, 129 P.3d 999 (Colo.2006). A trial court may give this permissible inference instruction as long as it furthers two underlying rationales. *Id.* at 1002. The instruction should be both punitive and remedial; it should deter the parties from destroying evidence, and restore the prejudiced party to the position she would have been in had the evidence not been destroyed. *Id.* Therefore, a trial court acts within its discretion in giving an instruction emphasizing a litigant's destruction of evidence and informing the jury of the adverse inference to be drawn from it when the particular situation calls for punitive and remedial measures.

There are certainly strong policy justifications for instructing a jury on the permissible inferences of undue influence and unfairness when the case involves an elderly person making a significant conveyance to a caretaker. First, the inferences—the grantee unduly influenced the conveyance and made the conveyance unfair, unjust, and unreasonable via her fiduciary and confidential relationship with the grantor—are not necessarily obvious. Second, Colorado's legislature expressed a policy goal of protecting elderly persons from financial manipulation by un-

scrupulous family members, caregivers, and others when it passed the Protection Against Financial Exploitation of At-risk Adults Act. § 26–3.1–201 through –207, C.R.S. (2008). This is an important goal, considering courts have difficulty assessing the actual intent of a deceased grantor, particularly if the grantor experienced physical, mental, or medical problems at the time of the conveyance. However, though these policy goals support a trial court's decision to instruct a jury on the permissible inferences of undue influence and unfairness, they do not require it do so.

Because we agree with the court of appeals that the trial court's instructions properly informed the jury of the law regarding voiding conveyances based on undue influence, we review the trial court's omission of Krueger's proffered instructions—an issue of form and style—for abuse of discretion. A trial court abuses its discretion in failing to give a jury instruction if that failure substantially prejudiced the complaining party. *See Armentrout v. FMC Corp.*, 842 P.2d 175, 186 (Colo.1992).

In this case, Krueger was not substantially prejudiced. The parties' evidence and arguments regarding Ary and Villa's relationship adequately informed the jury of its ability to conclude Ary unduly influenced Villa; a specific instruction linking the relationship to undue influence and unfairness was not needed. This case was fairly tried, and both parties focused on Ary's alleged undue influence. Krueger presented evidence of Ary's close relationship with Villa to support her argument that Ary unduly influenced him. Ary presented evidence of Villa's clear mind, strong will, and intent to make the conveyances to prove Ary's close relationship with Villa did not unduly influence him. Because the parties presented evidence regarding the relationship between Ary and Villa, and argued whether the relationship led to Ary's undue influence and the transaction's unfairness, an instruction regarding the permissible inferences of undue influence and unfairness was not necessary for the jury to understand that the relationship between Ary and Villa was evidence from which it could conclude Ary unduly influenced Villa and the transaction was unfair. Thus,

Krueger was not substantially prejudiced by a lack of instructions, and the trial court did not abuse its discretion by not offering them.

## CONCLUSION

For the foregoing reasons, we hold a rebuttable presumption has a limited purpose, and once that purpose is fulfilled it does not continue in a case. Here, Krueger raised the rebuttable presumptions of undue influence and unfairness, the presumptions shifted the burden of going forward to Ary, and Ary met that burden. Because Ary rebutted the presumptions, they can no longer establish the presumed facts as a matter of law, and do not continue in the case. However, we also hold that even when a rebuttable presumption is no longer operative, the jury may still infer the presumed facts from the evidence giving rise to the presumption. In this case, nothing prevented the jury from inferring undue influence and unfairness from Ary's fiduciary and confidential relationship with Villa. Whether the trial court instructs a jury on the permissible inference is within its discretion, and the trial court did not abuse its discretion in this case. Accordingly, the court of appeals is affirmed.